Larry FLYNT and LFP,
Inc., Plaintiffs,

v.

Donald H. RUMSFELD, Secretary
of Defense, and United States De-
partment of Defense, Defendants.

Civil Action No. 01–2399(PLF).

United States District Court,
District of Columbia.

Jan. 8, 2002.

John Perazich, Washington, DC, for plaintiffs.

John R. Griffiths, U.S. Department of Justice, Civil Division, Washington, DC, David Jay Anderson, U.S. Department of Justice, Federal Programs Branch, Washington, DC, Vincent Morgan Garvey, U.S. Department of Justice, Civil Division, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

This matter came before the Court for a hearing on plaintiffs' motion for preliminary injunction. Plaintiffs Larry Flynt and LFP, Inc. seek a preliminary injunction against Donald H. Rumsfeld, the Secretary of Defense, and the United States Department of Defense, restraining them from prohibiting or interfering with plaintiffs' asserted First Amendment right to have *Hustler Magazine* correspondents accompany American troops on the ground in Afghanistan. In particular, plaintiffs seek permission to observe first-hand United States troops engaged in combat and to report news of these military activities to the American people, subject to "reasonable and necessary reporting restrictions intended to advance military operational security in a material way." The defendants oppose any such injunction on a variety of grounds, including the ground that judicial review of military decisions with respect to media access to the battlefield may be inappropriate.

■ On a motion for a preliminary injunction, plaintiffs must demonstrate that they have a substantial likelihood of succeeding on the merits of the case and that they will suffer irreparable injury absent an injunction. The Court must also consider the harm to defendants or other interested parties (balance of harms), and whether an injunction would be in the public interest or at least not be adverse to the public interest. *See Al–Fayed v. CIA,* 254 F.3d 300, 303 (D.C.Cir.2001); *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C.Cir.1989); *Washington Metro., Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977); *Milk Industry Foundation v. Glickman,* 949 F.Supp. 882, 888 (D.D.C.1996).

■ Plaintiffs are not required to prevail on each of these factors. Rather, the factors must be viewed as a continuum, with more of one factor compensating for less of another. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 747 (D.C.Cir.1995). An injunction may be justified "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.* Conversely, when the other three factors strongly favor interim relief, a court may grant injunctive relief when the moving party has merely made out a "substantial" case on the merits. *See Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d at 843–45. In sum, an injunction may be issued "with either a high probability of success and some injury, or vice versa." *Cuomo v. United States Nuclear Regulatory Comm'n,* 772 F.2d 972, 974 (D.C.Cir.1985). In this case, however, plaintiffs have failed to demonstrate either.

The Court is persuaded that in an appropriate case there could be a substantial likelihood of demonstrating that under the First Amendment the press is guaranteed a right to gather and report news involving United States military operations on foreign soil subject to reasonable regulations

to protect the safety and security of both the journalists and those involved in those operations, as well as the secrecy and confidentiality of information whose dissemination could endanger United States soldiers or our allies or compromise military operations. *See The Nation Magazine v. United States Department of Defense*, 762 F.Supp. 1558, 1571–74 (S.D.N.Y.1991). The specific parameters of this First Amendment "qualified right of access" and the adequacy under the Due Process Clause of the guidelines and regulations promulgated by the Department of Defense to implement that right would depend upon the particular circumstances presented. *See JB Pictures, Inc. v. Department of Defense*, 86 F.3d 236, 238–39 (D.C.Cir.1996). Whether plaintiffs in this case are likely to succeed on the merits, however, is far from clear.

As defendants point out, it does not appear that plaintiffs have in fact been denied the access they seek or that they necessarily would have been denied such access if they had pursued the matter fully through available military channels. It is true that by letter of November 7, 2001, Assistant Secretary of Defense Victoria Clarke offered plaintiffs only media access for the coverage of air strikes and humanitarian drops and the interview of service persons in the region and not permission to accompany ground troops on combat missions; but she never denied plaintiffs' request either. *See* Complaint, Ex. C, November 7, 2001, Letter from Assistant Secretary Victoria Clarke to Larry Flynt. Rather, she indicated that the only U.S. troops on the ground at that time were involved in "special operations activity," making it difficult for the media to accompany troops on combat missions; but she also said that the Department of Defense would attempt to allow greater access to ground troops as conditions in Afghanistan evolved. *Id.* She further advised Mr. Flynt to contact Commander Jeffrey Alderson to make arrangements for some form of access—admittedly, not the precise type of access plaintiffs sought. *See id.* Plaintiffs chose not to pursue this avenue but filed this lawsuit instead. Based on the record as it currently stands, therefore, the Court cannot find that the Department of Defense has denied plaintiffs' request for access and, in view of changed circumstances, cannot say that any such request would not have been granted—or would not now be granted—at least in part.

As Commander Alderson states in his declaration of December 10, 2001, "[t]he military situation in and around Afghanistan has been a rapidly changing, fluid environment and so the support for press coverage has also passed through several phases.... [Today] representatives of American news media, as well as foreign journalists, are present in Afghanistan and are providing extensive coverage of Operation Enduring Freedom." Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, Ex. E, Declaration of William Jeffery Alderson ¶¶ 3, 5. Press reports of November 27 and December 9, 2001 (and presumably others) indicate that members of the press recently have been allowed to accompany U.S. troops on the ground in Afghanistan, although it is unclear whether these journalists have been permitted to witness actual combat conditions. *See, e.g.*, Lee Hill Kavanaugh, *Soldiers in Chaotic Land Kindle Harmony at Home*, Kansas City Star, Dec. 9, 2001, at A1; *Reporters Accompany Marines; First Allowed by Pentagon to Cover Combat*, Commercial Appeal, Nov. 27, 2001, at A6. Obviously, a great deal has changed in the ever-evolving situation since Assistant Secretary Clarke's letter to Mr. Flynt of November 7, coverage of troop activities in Afghanistan in the intervening weeks has increased, and the media

now has some level of open access to American troops on the ground in Afghanistan. Thus, it is not certain that a request for access by plaintiffs, if one were made, would be denied at this time.

So far as appears, plaintiffs have the same right of access to military operations in Afghanistan as do other members of the media. As discussed above, media access has increased in recent weeks, and plaintiffs have failed to demonstrate how or whether the defendants now would deny access to them. Plaintiffs therefore have failed to demonstrate that they will suffer irreparable harm in the absence of a preliminary injunction. Furthermore, in the absence of a stronger showing by plaintiffs, the balance of harms and the public interest weigh heavily in defendants' favor. The Department of Defense has expressed, albeit somewhat vaguely and with minimal detail, its commitment to providing the media with open access to military operations in Afghanistan, consistent with operational and security concerns, and the media in fact has enjoyed increased access since this lawsuit was filed. Whether defendants are doing enough to satisfy the First Amendment or the Due Process Clause are questions that will have to await the development of a fuller record. On the facts and circumstances presented at this stage, however, plaintiffs have failed to demonstrate their entitlement to injunctive relief. For all of these reasons, it is hereby

ORDERED that plaintiffs' request for a preliminary injunction is DENIED. The parties are encouraged to agree on an expedited briefing and argument schedule for consideration of the defendants' motion to dismiss or for summary judgment.

SO ORDERED.