Robert H. ADAIR et al., Plaintiffs,

v.

Gordon R. ENGLAND, Secretary of the Navy, et al., Defendants.

Chaplaincy of Full Gospel Churches et al., Plaintiffs,

v.

Gordon R. England, Secretary of the Navy, et al., Defendants.

No. CIV.A.00–0566(RMU), CIV.A.99–2945(RMU).

United States District Court, District of Columbia.

July 31, 2002.

Arthur A. Schulcz, Sr., Vienna, VA, for plaintiffs.

Thomas E. Caballero, U.S. Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION

URBINA, District Judge.

DENYING THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION TO DELAY THE NAVY'S CHAPLAIN PROMOTION BOARDS UNTIL AFTER THE COURT RULES ON THE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE CONSTITUTIONALITY OF THOSE BOARDS

## I. INTRODUCTION

These cases come before the court on the plaintiffs' motion for a preliminary injunction to delay the Navy's chaplain promotion boards until after the court rules on the plaintiffs' motion for partial summary judgment on the constitutionality of

those boards.[1] The plaintiffs, current and former Navy chaplains and an ecclesiastical endorsing agency for military chaplains, bring these suits alleging that the Navy's policies and practices favor one religion over another in violation of the First Amendment's Establishment and Free Exercise Clauses, and in violation of the Fifth Amendment's Equal Protection Clause. Specifically, the plaintiffs charge that the hiring, retention, and promotion policies of the Navy Chaplain Corps demonstrate an unconstitutional endorsement of liturgical Christian sects over non-liturgical Christian sects.[2] For the reasons that follow, the court denies the plaintiffs' motion for a preliminary injunction.

## II. BACKGROUND

Although the above-captioned cases are not consolidated for all purposes, they have been consolidated for purposes of all pretrial pending motions.[3] In the *Chaplaincy* case, the plaintiffs are an endorsing agency for military chaplains and seven of its individual members. In the *Adair* case, the plaintiffs are 17 current and former non-liturgical chaplains in the Department of the Navy ("the defendants," "Navy," or "DON"). In both cases, the plaintiffs allege that the Navy has established and maintained an unconstitutional religious quota system for promotion, assignments, and retention of Navy chaplains, in violation of both the Establishment Clause and the Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fifth Amendment. Specifically, the plaintiffs allege that the Navy's policies and practices favor liturgical Christian chaplains over non-liturgical Christian chaplains.[4]

On January 10, 2002, the court issued a Memorandum Opinion granting 'in part and denying in part the defendants' motion to dismiss. *Adair v. England*, 183 F.Supp.2d 31 (D.D.C.2002). The court held: that strict scrutiny applies to the plaintiffs' First Amendment and equal protection claims; that the plaintiffs did not need to exhaust their administrative remedies before filing suit in federal court; that the plaintiffs had stated a claim that the Navy's hiring and retention policies violate the Establishment Clause; that the Navy's practices of allowing chaplains to rate other chaplains for promotions and of allowing multiple chaplains to serve on promotion boards do not violate the Establishment Clause; that the plaintiffs had stated a claim that the Navy's practice of displaying the religious identity of chaplains up for promotion violates the Establishment Clause and Free Exercise Clause; that the Navy's practice of having only "General

1. This Memorandum Opinion sets forth the court's reasoning for its previous order denying the plaintiffs' motion on this issue.

2. For an explanation of the differences between liturgical and non-liturgical Christian sects, see the court's Memorandum Opinion issued January 10, 2002. *Adair v. England*, 183 F.Supp.2d 31 (D.D.C.2002).

3. In January 2001, the court's Calendar Committee transferred both of these cases from Judge June Green to this member of the court. In an order dated September 26, 2000, Judge Green accepted the parties' joint recommendation and consolidated the two cases for purposes of the pretrial pending motions. Order dated Sept. 26, 2000. The parties and the court have continued to treat these cases as consolidated for purposes of all pretrial motions.

4. For the sake of brevity, the court will not reiterate the extensive factual and procedural history, and the numerous allegations in these cases. For a detailed discussion of these matters in the *Adair* and *Chaplaincy* cases, see the court's January 10, 2002 Memorandum Opinion. *Adair*, 183 F.Supp.2d at 35–45. For a detailed discussion of the factual background of the *Chaplaincy* case, see Judge Green's August 17, 2000 Memorandum Opinion at 2–7.

Protestant" religious services could violate the Establishment Clause; and that the plaintiffs had stated a free speech claim. *Id.*

On January 4, 2002, the plaintiffs filed their third motion for injunctive relief in the above-captioned cases.[5] The plaintiffs sought to delay the convening of the Navy's chaplain promotion boards for fiscal year ("FY") 2003 that were scheduled to begin on February 4, 2002. In short, the plaintiffs challenged the legality of chaplain promotion boards on a number of grounds. On February 1, 2002, the court denied the plaintiffs' motion. Because the plaintiffs cannot demonstrate irreparable harm, they do not meet the high standard for the issuance of a preliminary injunction.

## III.  ANALYSIS

### A.  Legal Standard for Injunctive Relief

This court may issue a preliminary injunction only when the movant demonstrates:

(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C.Cir.1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir.1995)); *see also World Duty Free Americas, Inc. v. Summers,* 94 F.Supp.2d 61, 64 (D.D.C.2000). The district court must balance the strengths of the moving party's arguments on each of the four factors. *CityFed Fin. Corp.,* 58 F.3d at 747. "These factors interrelate on a sliding scale and must be balanced against each other."[6] *Davenport v. Int'l Bhd. of Teamsters,* 166 F.3d 356, 360–61 (D.C.Cir.1999) (citing *Serono Labs., Inc. v. Shalala,* 158 F.3d 1313, 1318 (D.C.Cir.1998)).[7]

In addition, a particularly strong showing on one factor may compensate for a

5.  On February 2, 2000, the *Chaplaincy* plaintiffs filed a motion for a temporary restraining order and a preliminary injunction seeking to block the impending selection of a new Chief of Chaplains until the court "evaluates the procedures and policies at issue in this case." Mot. for T.R.O. and Prelim. Inj. dated Feb. 2, 2000. On February 15, 2000, Judge Green denied that motion. Mem. Op. dated Feb. 15, 2000.

In addition, the plaintiffs also filed a motion for a preliminary injunction asking the court to prevent the Navy from either censoring or compelling their speech by requiring them to recruit new members to the Navy's Chaplain Corps. On March 29, 2002, this court denied that motion without prejudice, concluding that the court lacked jurisdiction over the claims that the plaintiffs set forth in their motion for a preliminary injunction since neither complaint included these allegations. *Adair v. England,* 193 F.Supp.2d 196 (D.D.C. 2002). The court granted the plaintiffs leave to supplement their complaints pursuant to

Federal Rule of Civil Procedure 15(d), which the plaintiffs did on April 15, 2002. *Id.*

6.  When a party seeks a mandatory injunction, i.e., to change the *status quo* rather than to preserve it, "the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo–Mitsubishi, Ltd.,* 15 F.Supp.2d 1, 4 (D.D.C.1997) (internal quotations omitted), *aff'd,* 159 F.3d 636, 1998 WL 203110 (D.C.Cir.1998) (table, text in Westlaw).

7.  The court takes this opportunity to raise an issue that needs clarification. Specifically, on the question of whether a party moving for a temporary restraining order or a preliminary injunction must show *all* four factors to prevail on such a motion, the D.C. Circuit seems to have set forth two lines of precedent that do not entirely overlap. The differences appear unreconciled.

weak showing on one or more of the other factors. *Serono Labs., Inc.,* 158 F.3d at 1318. "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.,* 58 F.3d at 747. If the plaintiff makes a particularly weak showing on one factor, however, the other factors may not be enough to compensate. *Taylor v. Resolution Trust Corp.,* 56 F.3d 1497, 1507

An example of the first line of cases is *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060 (D.C.Cir.1998). In that case, the Court of Appeals stated:

> To demonstrate entitlement to a preliminary injunction, a litigant must show "1) a substantial likelihood of success on the merits, 2) that it would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction."

*Mova Pharm. Corp.,* 140 F.3d at 1066 (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir.1995)). The Circuit's use of the phrase "a litigant must show" before the four factors and the use of "and" before the fourth factor clearly indicate that a litigant must meet all factors to prevail on a motion for injunctive relief.

In contrast, *Davenport v. Int'l Bhd. of Teamsters,* 166 F.3d 356 (D.C.Cir.1999), represents a second line of cases. In *Davenport,* the Court of Appeals instructs that "A court considering a plaintiff's request for a preliminary injunction must examine whether: [the four factors]." 166 F.3d at 360. Notably, the Court of Appeals did not state that a litigant "must show" all four factors.

In addition, the most crucial language in *Davenport* in terms of this discussion occurs when the Court of Appeals states, "In light of our affirmance of the district court's conclusion that the plaintiffs are not likely to succeed on the merits, it would take a very strong showing with respect to the other preliminary injunction factors to turn the tide in plaintiffs' favor." *Davenport,* 166 F.3d at 366. In this instance, the Circuit is not requiring a showing on all four factors for the issuance of injunctive relief.

These diverging lines of cases from the D.C. Circuit have apparently led to a split within our district court. Some district judges have understandably interpreted the precedent to mean that "Plaintiffs are not required to prevail on each of these factors." *Flynt v. Rumsfeld,* 180 F.Supp.2d 174, 175 (D.C.Cir.2002).

Other district judges, including this one, have understandably interpreted the precedent to require a showing on all four factors.

Both positions can justifiably be drawn from D.C. Circuit precedent, reflecting the *Mova Pharm. Corp./CityFed Fin. Corp. v. Davenport* distinction. Having said that, the view of this member of the district court is that the *Mova Pharm. Corp./CityFed Fin. Corp.* lineage runs stronger through this Circuit's precedent.

This court is familiar with the D.C. Circuit's instruction that the four factors should be balanced on a sliding scale and that a party can compensate for a lesser showing on one factor by making a very strong showing on another factor. *CityFed,* 58 F.3d at 747; *Davenport,* 166 F.3d at 361. Having said that, in this court's view, the best interpretation of Circuit precedent, *Davenport* notwithstanding, is that a party moving for injunctive relief must make a showing on· *all four factors* to prevail but the strength of the showing can vary on each factor. Put in mathematical terms, a party seeking injunctive relief must make at least a 51 percent showing on each factor but since this might not be enough to grant this extraordinary relief, a 90 percent showing of likelihood of success on the merits, for example, can·compensate for a mere 51 percent showing of irreparable harm.

This interpretation jibes well with the following language from *CityFed Fin. Corp.:* "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.,* 58 F.3d at 747. Here, the Circuit explains that there must be *at least some showing* of irreparable injury. *Id.*

A clarification of this issue from the D.C. Circuit would be useful for the members of the district court. In the case at bar, however, no matter which standard the court applies, the plaintiffs would still not be entitled to a preliminary injunction since they fail to make any cognizable showing of irreparable harm. *CityFed Fin. Corp.,* 58 F.3d at 747.

(D.C.Cir.1995), *amended on other grounds on reh'g*, 66 F.3d 1226 (D.C.Cir.1995).

It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085, 112 S.Ct. 2929, 120 L.Ed.2d 926 (1992) (*per curiam*). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for 'the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F.Supp.2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

Moreover, the other salient factor in the injunctive-relief analysis is irreparable injury. A movant must "demonstrate at least 'some injury' " to warrant the granting of an injunction. *CityFed Fin. Corp.*, 58 F.3d at 747 (quotation omitted). Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *Id.*

Finally, because preliminary injunctions are extraordinary forms of judicial relief, courts should grant them sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. *Ambach v. Bell*, 686 F.2d 974, 979 (D.C.Cir. 1982). In addition, any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown. *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C.Cir. 1990) (citation omitted).

## B. The Plaintiffs Fail to Show Irreparable Harm

The plaintiffs advance several arguments as to why the chaplain promotion boards are illegal. In its January 10, 2002 Memorandum Opinion, however, the court dismissed for failure to state a claim each of the plaintiffs' challenges to the constitutionality of the chaplain promotion boards except for the claim that a chaplain's religious affiliation should not be identified to a chaplain promotion board. *Adair*, 183 F.Supp.2d at 59–63. Accordingly, the only challenge that could possibly succeed on the merits would be the plaintiffs' claim that the religious affiliation of chaplains who are being considered for promotions should not be identified to the chaplain promotion board.[8]

---

8. In their motion for a preliminary injunction, the plaintiffs seek to incorporate into the court's resolution of the instant motion their December 20, 2001 motion for partial summary judgment. Mot. for Prelim. Inj. at 2. The defendants rightly label the plaintiffs' maneuver as "an impermissible attempt to advance and truncate the time for defendants to respond to plaintiffs' motion for partial summary judgment." Defs.' Opp'n to Mot. for Prelim. Inj. ("Defs.' Opp'n") at 10.

In its September 28, 2001 order, the court denied without prejudice the plaintiffs' outstanding motion for partial summary judgment and instructed the plaintiffs to refile their motion for partial summary judgment after the court issued its Memorandum Opinion regarding the defendants' motion to dismiss so that the parties would know which claims, if any, survived the defendants' motion to dismiss. Order dated Sept. 28, 2001. In addition, the court's September 28, 2001 order stated that "[t]he court agrees with the defendants that they should be entitled to have a full briefing period on the plaintiffs' motion" for partial summary judgment. *Id.* at 2. Moreover, the court specifically directed the plaintiffs to refile their motion for partial summary judgment after the court issued its

In its opposition to the plaintiffs' motion for a preliminary injunction, however, the defendants proffer that the Navy no longer displays Additional Qualification Designator ("AQD") codes (alleged "faith codes") to chaplain promotion boards. Defs.' Opp'n at 14–15. AQD codes correspond to a chaplain's "endorsing agency or denomination/faith." *Id.* at 14. The defendants state unequivocally that "the Navy removes, and for two years has removed, the AQD codes of chaplain promotion candidates from the materials that are provided to the members of Navy selection boards." *Id.* As Lieutenant Commander Carey M. Sill declares:

> My office began removing the AQD from the Officer Summary Record for chaplains [sic] corps promotion selection boards starting with the FY–01 Commander Chaplain Corps Promotion Selection Board held on April 13, 2000. The removal of the AQD from the Officer Summary Record for every chaplain corps promotion selection board, both active and reserve, continues to this day. The AQD is listed on no other documentation which goes before the chaplain corps promotion selection boards.

*Id.* Ex. A (Sill Decl.) at 3. The court notes the importance of this declaration by the defendants since it marks the first time the defendants have made such a representation to the court since the start of this litigation. The court also points out that the defendants changed their policy of including the AQD codes for the FY–01 chaplain promotion boards convened in April 2000, which means the Navy apparently altered this practice at the earliest

possible juncture since the *Chaplaincy* and *Adair* plaintiffs filed their respective complaints in November 1999 and March 2000.

In response, the plaintiffs argue that in a July 2000 declaration in a Southern District of California case involving similar issues, the defendants admitted that the practice of displaying a chaplain's AQD code to a chaplain promotion board was continuing. Pls.' Reply at 9–10. The court does not consider this alleged admission, made nearly two years ago in a California case, to be nearly as important as the plaintiffs think. In contrast, the court grants much more weight to the declaration of Lieutenant Commander Sill made *in this case* as recently as January 17, 2002. As noted previously, Lieutenant Commander Sill's representation to the court is that the Navy has totally ceased displaying AQD codes for all chaplain promotion boards, both active and reserve.

Accordingly, at this point, the plaintiffs cannot demonstrate any irreparable harm that would justify the granting of an extraordinary remedy, i.e., the issuance of a preliminary injunction. As noted earlier, the D.C. Circuit has held that a movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. *CityFed Fin. Corp.*, 58 F.3d at 747 (quotation omitted). In addition, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *Id.* In this case, the plaintiffs have not demonstrated any injury since the defendants have ceased this practice and have given no indication that they plan to resume their practice of including the

---

Memorandum Opinion relating to the defendants' motion to dismiss. *Id.*

On January 10, 2002, the court issued its 62–page Memorandum Opinion denying in part and granting in part the defendants' motion to dismiss. *Adair*, 183 F.Supp.2d 31. Because the court deems the plaintiffs' attempt

to incorporate its motion for partial summary judgment into the instant motion for a preliminary injunction an impermissible backdoor maneuver, the court will not consider the plaintiffs' December 20, 2001 motion for partial summary judgment in its analysis of their motion for a preliminary injunction.

AQD codes. Accordingly, since the plaintiffs have failed to demonstrate any injury, the court denies the plaintiffs' motion for a preliminary injunction and need not consider the other factors in the injunctive-relief test. *Id.*

## IV. CONCLUSION

For all these reasons, the court denies the plaintiffs' motion for a preliminary injunction to delay the Navy's chaplain promotion boards until after the court rules on the plaintiffs' partial summary judgment motion on the constitutionality of those boards.