Jed DODD et al., Plaintiffs,

v.

Mac A. FLEMING et al., Defendants.

No. Civ.A. 01–1775(RMU).

United States District Court,
District of Columbia.

Aug. 5, 2002.

Charles Both, Yablonski, Both & Edelman, Washington, DC, Theodore M. Lieverman, Spector, Roseman & Kodroff, P.C., Philadelphia, PA, for plaintiffs.

John O'B. Clarke, Jr., Highsaw, Mahoney & Clarke, P.C., Washington, DC, for defendants.

William A. Bon, Brotherhood of Maintenance of Way Employees, Southfield, MI, for general counsel of defendant BMWE.

### MEMORANDUM OPINION

URBINA, District Judge.

### DENYING THE PLAINTIFFS' SECOND MOTION FOR A PRELIMINARY INJUNCTION

### I. INTRODUCTION

This case comes before the court on the plaintiffs' complaint and second motion for a preliminary injunction alleging violations of sections 101(a) and 501 of the Labor Management Reporting and

Disclosure Act ("LMRDA"), as amended, 29 U.S.C. §§ 411 and 501, by the defendants, the Brotherhood of Maintenance of Way Employees ("BMWE"), Mac A. Fleming (the BMWE's President), and William LaRue (the BMWE's Secretary–Treasurer) (collectively, "the defendants"). The seven individual plaintiffs in this action, Jed Dodd, William Manning, Joseph Crandley, George Davidson, and Bruce Glover, are current members of the BMWE holding elected positions in its local federations. The other two plaintiffs are the Pennsylvania Federation, Brotherhood of Maintenance of Way Employees ("Penn.Federation") and the Burlington Northern System Federation, Brotherhood of Maintenance of Way Employees ("Burlington") (collectively, "the plaintiffs"). Penn. Federation and Burlington are both unincorporated voluntary associations and labor organizations within the meaning of section 3(i) of the LMRDA, as amended, 29 U.S.C. § 402(i). The dispute arises out of a 2001 membership referendum held on the possibility of a merger between the BMWE and the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers ("Boilermakers"). The plaintiffs' asserted violations of the LMRDA include the defendants' denying the plaintiffs access to the BMWE's membership address databases and denying them an opportunity to express opposition to the merger in the BMWE newsletter. Because a majority of referendum voters opposed the merger, the BMWE and Boilermakers negotiated a new agreement. The BMWE plans to hold another merger referendum at a time as yet undetermined. The plaintiffs have filed the instant motion for a preliminary injunction claiming it is likely that the same alleged LMRDA violations will occur in the second merger referendum. After consideration of the parties' submissions and the relevant law, the court denies the plaintiffs' motion for a preliminary injunction because the plaintiffs fail to demonstrate a likelihood of success on the merits and that they will suffer irreparable harm.

## II. BACKGROUND

### A. Factual Background

The BMWE represents nearly 50,000 workers in the railway industry throughout the United States and Canada for the purposes of collective bargaining. Compl. at 5. The top BMWE organizational division is the International Union, also known as the Grand Lodge, which consists of all BMWE members. *Id.* The BMWE and Grand Lodge are governed by a constitution and bylaws. *Id.* Article I, Section 1 of the constitution and bylaws provides, in part, that "[t]he Grand Lodge shall not merge itself with any other labor organization without first obtaining approval of the majority of the ballots returned by the active membership in good standing through a referendum ballot." *Id.* Additionally, Section 4 provides, in pertinent part, that:

[e]very ... candidate for Grand Lodge office shall have certain rights with respect to the distribution of campaign literature and freedom from discrimination. The Grand Lodge will comply with all reasonable requests of all such candidates to distribute by mail or otherwise, at the candidate's expense, campaign literature in aid of his candidacy to all members ... Whenever the Grand Lodge ... authorize[s] distribution to members ... of campaign literature on behalf of any ... candidate ... or on behalf of the Grand Lodge itself with reference to elections, similar distribution shall be made by the Grand Lodge ... for any other candidate if so requested by such candidate, and equal treatment will be accorded as to the expense of such distribution to be borne

by such candidate. Every candidate ... shall have the right, upon request, ... to inspect the list containing the names and ... addresses of all members[,] ... which lists shall be maintained by the Secretary–Treasurer ... The brotherhood may, however, expend its funds for notices, factual statements and other expenses necessary for the conduct of its elections so long as such activities do not involve promotion of candidates for office.

Dodd Aff. dated August 22, 2001, Ex. 1.

On June 25, 2001, the Grand Lodge officers voted to accept a newly negotiated merger agreement with the Boilermakers and to submit the issue for ratification to the BMWE membership. Compl. at 6. During the June 25th meeting, plaintiff Dodd asked defendant Fleming when the defendants would mail the ballots to the BMWE members. *Id.* Defendant Fleming did not provide a date for the mailing until August 16, 2001, the day after the defendants mailed the ballots to the members. *Id.* at 7.

The defendants led a campaign to convince members to vote in favor of the proposed merger. *Id.* The plaintiffs opposed the proposed merger and tried to communicate the reasons for their opposition to BMWE members but claim that the actions of the defendants hampered the plaintiffs' efforts. *Id.* In order to campaign against the merger, the plaintiffs wish to gain access to the BMWE member mailing list[1] but cannot obtain access to that information without the defendants' consent. *Id.* at 10.

The 2001 ballot package sent by the BMWE to its members contains, in part, the following articles: (1) a two-page letter from defendant Fleming urging members to vote in favor of the proposed merger; (2) a nine-page overview of the merger agreement; and (3) an additional one-page letter from defendant Fleming addressing the opponents of the proposed merger by stating that the opponents have "misrepresented facts" and that "[i]n the event this merger does not occur, it is a fact that BMWE members are facing a dues increase in the amount of $5 to $10 per month in order to maintain services. The majority of BMWE officers concur on this point." *Id.* at 15.

On September 24 and 25, 2001, the referendum ballots were counted and the results finalized because the plaintiffs withdrew their first motion for a preliminary injunction. Mem. of Law in Support of Defs.' Mot. to Dismiss at 3. The final count revealed that less than half of the membership returned their mail-in ballots and, of those voting, a majority comprising 52.49 percent voted against the merger. *Id.* As such, the plaintiff's views opposing the proposed merger prevailed over the defendants' views supporting the proposed merger. *Id.*; Pls.' Opp'n to Defs.' Mot. to Dismiss at 6–7.

On May 15, 2002, the Grand Lodge officers voted 9–6 to reopen merger discussions with the Boilermakers. Dodd Decl. dated July 23, 2002 ("Dodd Decl.") ¶ 81. By June 17, 2002, the BMWE and the Boilermakers completed a new proposed merger agreement, which was then publicized to the BMWE members. *Id.* ¶ 85,

---

1. The court notes that both parties utilize the phrase "access to mailing lists" or some variation thereof. It is the court's understanding from relevant case law that "access" to a union's mailing list usually means that the party seeking "access" submits items to the union for mailing at that party's expense.

*E.g., Carothers v. Presser*, 818 F.2d 926, 927 n. 3. Indeed, this is the type of "access" or relief requested by the plaintiffs in their complaint and pending preliminary injunction motion. Compl. at 10; Pls.' 2d Mot. for Prelim.Inj. at 2.

Exs. 41–42. At the Grand Lodge's 44th quadrennial convention held July 8–12, 2002, the defendants apparently touted the advantages of the proposed merger. *Id.* ¶¶ 86–87. The delegates voted to amend the BMWE constitution by adding the statement, "[e]ach member specifically retains the right to communicate with any other Brotherhood member at any time." *Id.* ¶ 89, Ex. 48.

On July 10, 2002, the delegates to the convention passed a resolution to submit the new proposed merger to a membership vote. *Id.* ¶ 90, Ex. 45. The resolution requires the BMWE's president to complete the referendum "with all deliberate speed" and, in conjunction with the merger committee, to "take steps as they deem necessary to enable the membership to cast an informed vote...." *Id.*

### B. Procedural History

On August 22, 2001, the plaintiffs filed their complaint along with an application for a temporary restraining order and motion for a preliminary injunction. The court convened a hearing on September 10, 2001, where the parties presented oral argument regarding the requested preliminary injunctive relief. On September 20, 2001, after the parties submitted to outside mediation at the urging of the court, the plaintiffs withdrew their motions for interim injunctive relief, and the referendum ballots were counted. On February 20, 2002, the defendants moved to dismiss the complaint, suggesting that the case is moot because the plaintiffs prevailed in the 2001 referendum vote. Defs.' Mot. to Dismiss at 4–5. The plaintiffs filed a second mo-

tion for a preliminary injunction[2] along with an application for a temporary restraining order on July 25, 2002 to stop the second referendum process. The court denied the plaintiffs' application for a temporary restraining order on July 26, 2002 because the plaintiffs failed to show the requisite imminent harm which would justify the granting of such extraordinary relief. Order dated July 26, 2002.

### III. ANALYSIS

#### A. Legal Standard for a Preliminary Injunction

This court may issue a preliminary injunction only when the movant demonstrates:

(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharmaceutical Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C.Cir.1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers,* 94 F.Supp.2d 61, 64 (D.D.C.2000). The district court must balance the strengths of the moving party's arguments on each of the four factors. *See CityFed Fin. Corp.,* 58 F.3d at 747. "These factors interrelate on a sliding scale and must be balanced against each other."[3] *Davenport v. International Bhd. of Teamsters,* 166 F.3d 356, 361 (D.C.Cir.

---

**2.** The plaintiffs' second motion for a preliminary injunction is the instant motion at issue herein.

**3.** When a party seeks a mandatory injunction, i.e., to change the *status quo* rather than to preserve it, "the moving party must meet a higher standard than in the ordinary case by

showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *See Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo–Mitsubishi, Ltd.,* 15 F.Supp.2d 1, 4 (D.D.C.1997) (internal quotations omitted), *aff'd,* 159 F.3d 636 (D.C.Cir.1998) (table, text in Westlaw).

1999) (citing *Serono Labs. v. Shalala,* 158 F.3d 1313, 1318 (D.C.Cir.1998)).[4]

■ In addition, a particularly strong showing on one factor may compensate for a weak showing on one or more of the other factors. *See Serono Labs.,* 158 F.3d at 1318. "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.,* 58 F.3d at 747. If the plaintiff makes a particularly weak showing on one factor, however, the other factors may not be enough to compensate. *See Taylor v. Resolution Trust Corp.,* 56 F.3d 1497, 1507 (D.C.Cir.1995), *amended on other grounds on reh'g,* 66 F.3d 1226 (D.C.Cir.1995).

■ It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf. Benten v. Kessler,* 505 U.S. 1084, 1085, 112 S.Ct. 2929, 120 L.Ed.2d 926 (1992) (*per curiam*). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *American Bankers Ass'n v. National Credit Union Admin.,* 38 F.Supp.2d 114, 140 (D.D.C.1999) (internal quotation omitted).

■ Moreover, the other salient factor in the injunctive-relief analysis is irreparable injury. A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. *CityFed Fin. Corp.,* 58 F.3d at 747. Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *See id.* Finally, because preliminary injunctions are extraordinary

forms of judicial relief, courts should grant them sparingly. *See Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. *See Ambach v. Bell,* 686 F.2d 974, 979 (D.C.Cir. 1982). In addition, any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown. *See National Treasury Employees Union v. Yeutter,* 918 F.2d 968, 977 (D.C.Cir.1990) (citation omitted).

## B. The Court Denies the Plaintiffs' Motion for a Preliminary Injunction

Because the plaintiffs have not made the requisite showing on the two most salient parts of the preliminary injunction test, i.e., substantial likelihood of success on the merits and irreparable harm, the court denies the plaintiffs' motion.

### 1. The Plaintiffs Have Not Shown a Likelihood of Success on the Merits

■ The plaintiffs argue that "there is every reason to believe that the second merger vote will take place in the same way as the first." Pls.' Mem. of P. & A. in Supp. of Mot. for Prelim.Inj. ("Pls.' Mot.") at 15. Specifically, the plaintiffs allege violations of section 101(a) of the LMRDA, which provides in part that every union member shall have "equal rights and privi-

---

4. This court, consistent with D.C. Circuit precedent, requires the party moving for injunctive relief to make a showing on all four factors to prevail, though the strength of the showing can vary on each factor. *Adair v. England,* 217 F.Supp.2d 1, 3 n. 7 (D.D.C. 2002).

leges ... to vote in elections or referendums." 29 U.S.C. § 411(a)(1). Although this provision itself does not require that union members have voting rights, it does provide that once the right to vote is given pursuant to a union's constitution or by-laws, that right is protected by section 101(a)(1) of the LMRDA. *E.g., Am. Postal Workers Union Headquarters Local 6885 v. Am. Postal Workers Union,* 665 F.2d 1096 (D.C.Cir.1981). In addition, "the right each member has to vote must be 'meaningful.'" *Bunz v. Moving Picture Mach. Operators Protective Union Local 224,* 567 F.2d 1117, 1121 (D.C.Cir.1977). Further, courts have recognized that:

> [i]n a democratic system such as the one envisioned by the LMRDA, it is axiomatic that members must have the opportunity to attempt to persuade their fellow members to reject or support a proposal which, as in the case at bar, strikes at the very heart of their quality of life both at work and at home.

*Bauman v. Presser,* 1984 WL 3255, at *7 (D.D.C.1984) (Bryant, J.). Section 101(a)(2) provides that union members have the right to assemble, express any views, arguments, or opinions, and to do so freely within and without union meetings. 29 U.S.C. § 411(a)(2). The D.C. Circuit has recognized that courts are to broadly read union members' rights under section 101(a). *Mallick v. Int'l Bhd. Elec. Workers,* 749 F.2d 771, 786 (D.C.Cir.1984).

 The plaintiffs argue that the first BMWE–Boilermakers merger referendum is indicative of the harm the plaintiffs are suffering and will suffer in the future if injunctive relief is not granted. Pls.' Mot. at 15. The right to vote on the new proposed merger is explicitly set forth in Article I, Section 1 of the BMWE constitution and bylaws. *Id.* at 14. The plaintiffs claim that the defendants denied members an informed vote in the first referendum by using the membership lists and BMWE resources to aggressively campaign in favor of the proposed merger. *Id.* at 15. The plaintiffs further allege that the defendants simultaneously prevented the plaintiffs from obtaining access to the membership in order to campaign against the proposed merger. *Id.*

Additionally, the plaintiffs claim that the defendants "violated Section 101(a) of [the] LMRDA by failing and refusing to adopt rules and procedures necessary to conduct a fair and honest election during the first Boilermakers referendum." *Id.* at 22. This lack of regulations, the plaintiffs argue, is inimical to a fair election and violates the right to an equal vote guaranteed by the LMRDA because it invites the defendants to adopt ad hoc procedures favorable to the defendants' desired outcome. *Id.* For example, the plaintiffs state that one of the defects in the first ballot count was the lack of a qualified and neutral election administrator. *Id.* The plaintiffs note that the defendants "attempted to address this problem by issuing new written procedures for the count and appointing" a neutral administrator to oversee the process. *Id.* at 24. Nonetheless, the plaintiffs are not fully satisfied because they claim that the defendants did not address the relevant voting procedures prior to counting the ballots and that "it was clear from the ballot count itself" that a neutral administrator was not in charge. *Id.* at 24–25. While recognizing that the LMRDA does not require a union to use an outside election administrator, the plaintiffs nonetheless ask the court to remedy the defendants' alleged past misconduct and to prevent such conduct from recurring by ordering that an experienced professional election administrator oversee the next referendum "as a remedy for past and continuing violations." *Id.* at 25. The plaintiffs also dispute the inclusion of pro-merger literature in the ballot packages

without similar accommodations made for anti-merger beliefs. *Id.* at 25–26.

In addition to alleged violations of section 101(a), the plaintiffs allege that the defendants violated section 501(a), which requires union officers to "hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolution of the governing bodies adopted thereunder . . . ." 29 U.S.C. § 501(a); Pls.' Mot. at 26–29. The plaintiffs' further allege that the defendants denied access to the mailing list, the BMWE journal, and the BMWE website, and that defendant Fleming intervened to prevent the printing of an article in the Canadian edition of the BMWE journal, which would have discussed the views opposing the proposed merger. Pls.' Mot. at 28. The plaintiffs also point to the defendants' failure to take the necessary steps to ensure fair election procedures. *Id.* As such, the plaintiffs opine that such conduct violated section 501 and the defendants "should be enjoined from repeating their unlawful conduct during the second merger vote." *Id.* at 29.

The law in this circuit is clear that a union's refusal to give access to its mailing list during a referendum does not per se constitute a violation of section 101(a). *Carothers v. Presser*, 818 F.2d 926, 935 (D.C.Cir.1987). Rather, an independent violation of the LMRDA may serve as a predicate for a court to grant access to the union's mailing list as an equitable remedy. *Id.* In this vein, courts have held that a faulty election—whatever the outcome— inevitably taints the democratic process and requires judicial intervention. *Bauman*, 1984 WL 3255, at *9; *Morris v. Int'l Bhd. of Locomotive Eng'rs*, 165 F.Supp.2d 662, 672 (N.D.Ohio 2001).

The instant case is not as factually similar to *Bauman* and *Morris* as the plaintiffs contend. The *Bauman* and *Morris* courts found that the defendants (labor unions) violated the LMRDA. *Bauman*, 1984 WL 3255, at *7; *Morris*, 165 F.Supp.2d at 667. These violations, the courts felt, had irreparably tainted the votes to the point that the elections needed to be stopped and re-administered in a fair manner. *Bauman*, 1984 WL 3255, at *9; *Morris*, 165 F.Supp.2d at 672–73. In other words, there was concrete evidence of LMRDA violations that those courts could point to in order to justify the extraordinary measure of granting injunctive relief. *Mazurek*, 520 U.S. at 972, 117 S.Ct. 1865 (noting that injunctions are "extraordinary relief" and should be granted sparingly). Had the *Bauman* and *Morris* courts not granted injunctive relief, immediate irreparable harm would have resulted to the plaintiffs since "much of the momentum the plaintiffs ha[d] gained as their message ha[d] gotten out would be diminished by a vote approving the merger, even if the vote later turn[ed] out to be invalid." *Morris*, 165 F.Supp.2d at 673.

Here, however, one complete referendum vote has already passed—a vote in which the plaintiffs' views prevailed. Pls.' Mot. at 8; Defs.' Opp'n at 2–3; *but see Morris*, 165 F.Supp.2d at 672 (suggesting in dictum that if the vote were held and if the plaintiffs won, the case would likely be moot). While this court reserves comment on the mootness issue in this case, the court finds the factual distinction important.

Indeed, the plaintiffs herein pray for a preliminary injunction as a "remedy for [the defendants'] past violation" of the LMRDA. Pls.' Mot. at 21. The plaintiffs' principal argument in their instant motion for a preliminary injunction is that "[t]here is every reason to believe that the second merger vote will take place in the same way as the first." *Id.* at 15. Beyond these

assertions, though, the plaintiffs have not alleged *any* facts that give rise to the conclusion that a preliminary injunction is warranted. *See Mazurek*, 520 U.S. at 972, 117 S.Ct. 1865 (noting that a preliminary injunction should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion). As evidence that the plaintiffs' allegations are unsupported, defendant Fleming states in his most recent declaration that the BMWE has not finalized any procedures for the second merger referendum. Fleming Decl. dated July 29, 2002 ("Fleming Decl.") at 2. Defendant Fleming further states that he is considering many proposals concerning the rules for the upcoming referendum, including those submitted by plaintiffs Dodd and Glover. *Id.* Therefore, it is possible that the defendants may adopt the plaintiffs' requested voting procedures, rendering any injunctive relief premature and fruitless.[5]

Because of the lack of evidence presented by the plaintiffs, it is not clear that they are likely to be successful on the merits with regard to the violations that they allege *are currently taking place or are likely to take place in the immediate future*. *American Bankers Ass'n*, 38 F.Supp.2d at 140 (holding that absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review"). Since the basis of this action is the original complaint, there is no factual foundation on which to ground relief regarding LMRDA violations that have yet to transpire. *Id.* If, for example, the procedures for the second referendum had been finalized and the plaintiffs felt that the defendants had committed violations of the LMRDA, then there might be grounds for preliminary injunctive relief. *E.g., Bauman*, 1984 WL 3255, at *9; *Morris*, 165 F.Supp.2d at 672–73. At this time, however, the plaintiffs cannot point to alleged violations of the LMRDA in the current referendum process.[6] Accordingly, the plaintiffs are not likely to be successful on the merits and their request for a preliminary injunction is denied.

## 2. The Plaintiffs Have Not Shown That They Will Be Irreparably Harmed

 Assuming *in arguendo* that the plaintiffs were able to sufficiently demonstrate a likelihood of success on the merits of their claims, the court would nevertheless deny the plaintiffs' requested injunctive relief because they fail to show that immediate irreparable harm is likely to result from the defendants' actions. The plaintiffs argue that without an injunction they will continue to suffer the irreparable harm resulting from the defendants' alleged tainting of the merger election. Pls.' Mot. at 29. The plaintiffs contend that once the ballots in a tainted election are tabulated and implemented, the status quo is lost forever and the loss of statutorily protected rights to full and equal partic-

---

5. If, as the plaintiffs argue, the past is indicative of what is to come, the defendants may indeed adopt some or all of the plaintiffs' suggested voting procedures. Pls.' Mot. at 24–25 (noting that "[a]fter this suit was filed, Defendants attempted to address [the lack of voting procedures] by issuing new written procedures for the count and appointing [an] arbitrator ...". Whether the new procedures will be legally adequate, however, cannot be ascertained as of now because they have yet to be formulated by the defendants. Thus, a preliminary injunction is premature.

6. The plaintiffs intimate, by filing the instant motion for a preliminary injunction under the original complaint (which references only the first referendum), that the defendants have engaged in a continuing course of conduct. *See* Pls.' Mot. at 10. As such, the plaintiffs argue that they are entitled to injunctive relief based on past alleged violations of the LMRDA. Pls.' Mot. at 21.

ipation in union affairs is an irreparable injury which must be prevented by the issuance of a preliminary injunction. Pls.' Mot. at 29 (citing *Bauman*, 1984 WL 3255 at *9; *Johnson v. Scavo*, 1977 WL 1641, 95 L.R.R.M. (BNA) 2373 (S.D.N.Y.1977)). The *Morris* court notes that the irreparable "harm to the plaintiffs is the inclusion of their vote in a tally that does not accurately represent the end total of the meaningful votes" of union members. *Morris*, 165 F.Supp.2d at 672. Indeed, speaking directly to the irreparable injury prong, the *Morris* court noted that "whether or not that tally results in a merger, the plaintiffs' votes will have been in the tainted count, resulting in a distortion of their political voices...." *Id.* Accordingly, the plaintiffs assert that the absence of a fair opportunity to communicate with the membership and a guarantee of fair voting procedures give rise to irreparable harm. Pls.' Mot. at 30.

For essentially the same reasons that the plaintiffs cannot show a likelihood of success on the merits, they cannot make the requisite showing of irreparable harm. Again, the plaintiffs appear to rely on *past* harms as justification for their request for injunctive relief with respect to the current referendum. Pls.' Mot. at 29–30. The plaintiffs fail to state any *present* action taking place that would harm them. *Id.* Rather, the plaintiffs simply point to the events surrounding the first referendum. *Id.* The court again refers to the unrebutted declaration of defendant Fleming, which states that no procedures have been finalized regarding the second referendum. Fleming Decl. at 2. In *Bauman* and *Morris*, the irreparable injury was clear in that those plaintiffs were denied a "meaningful vote" under the LMRDA, and injunctive relief was appropriate to remedy the violations. *Bauman*, 1984 WL 3255, at *9; *Morris*, 165 F.Supp.2d at 672. In the case at bar, however, the events alleged by the plaintiffs with regard to the first merger

referendum are not relevant because there is no evidence that they will suffer the same injuries in the second merger referendum. *E.g.*, Fleming Decl. at 2. Indeed, since the plaintiffs seek to change the status quo, they must show that " 'extreme or very serious damage' will result from the denial of the injunction." *Columbia Hosp. for Women Found., Inc.*, 15 F.Supp.2d at 4. Without alleging new facts regarding the acts of the defendants with respect to the second merger referendum, the plaintiffs have not met this higher standard. *Id.*

Because the plaintiffs have failed to show that they are likely to be successful on the merits and that they will suffer irreparable harm, the court need not address the last two requirements for a preliminary injunction. *Adair*, at 3 n. 7.

## IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for a preliminary injunction. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of August 2002.

### *ORDER*

#### DENYING THE PLAINTIFFS' SECOND MOTION FOR A PRELIMINARY INJUNCTION

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this _____ day of August 2002, it is hereby

**ORDERED** that the plaintiffs' second motion for a preliminary injunction is **DENIED.**

**SO ORDERED.**