**Vaughn A. CLARKE, Plaintiff,**

v.

**OFFICE OF FEDERAL HOUSING ENTERPRISE OVERSIGHT, an office within the U.S. Department of Housing and Urban Development, and Armando Falcon, Jr., in his official capacity as Director, Defendants.**

No. 04–1252.

United States District Court, District of Columbia.

Nov. 30, 2004.

58

Steven Mark Salky, Adam L. Rosman, Zuckerman Spaeder LLP, Washington, DC, for Plaintiff.

Marcia N. Tiersky, Department of Justice, Civil Division Federal Programs Branch, Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Before the Court are the plaintiff's Motion for Preliminary Injunction [# 5] and the defendant's Motion to Dismiss the complaint [# 9]. In this action, the plaintiff, Vaughn A. Clarke ("Clarke"), former Chief Financial Officer the Federal Home Loan Mortgage Corporation ("Freddie Mac"), challenges the actions of the defendants, Office of Federal Housing Enterprise Oversight ("OFHEO") and its Director, Armando Falcon, Jr., in ordering Freddie Mac to freeze termination benefits owed to him pursuant to a separation agreement. This is the second action brought before this Court relating to OFHEO's conduct in freezing the termination benefits of former Freddie Mac employees.[1] On September 30, 2004, Clarke filed a motion seeking preliminary injunctive relief against OFHEO's orders to Freddie Mac. OFHEO opposed this motion, and then filed a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 18, 2004. Following the oral argument before the Court on these motions on October 29, 2004, the parties filed supplemental pleadings. Upon consideration of the parties' motions and responsive pleadings, the Court **GRANTS** the plaintiff's Motion for Preliminary Injunction and **DENIES** the defendants' Motion to Dismiss.

1. *See Brendsel v. OFHEO,* 04cv487 (RJL).

## BACKGROUND

### I. The Brendsel Action

August 30, 2004, this Court issued preliminary injunctive relief in an action brought by Freddie Mac's former Chief Executive Officer, Leland C. Brendsel ("Brendsel"). *See Brendsel v. OFHEO,* 339 F.Supp.2d 52 (D.D.C.2004) *("Brendsel")*. In that case, Brendsel challenged OFHEO's actions in ordering Freddie Mac to freeze approximately $60 million in employment benefits owed to him upon his resignation, pending the outcome of administrative hearings regarding his conduct while employed as CEO of Freddie Mac. Upon his resignation from Freddie Mac, Brendsel was entitled to certain termination benefits pursuant to an employment agreement entered into by Brendsel and Freddie Mac on September 7, 1990, two years *prior* to the creation of OFHEO, an independent office within the U.S. Department of Housing and Urban Development ("HUD") charged with supervisory powers over Freddie Mac.

Brendsel resigned from Freddie Mac on June 6, 2003 at the request of the Board of Directors. The resignation was considered to be for "good reason" and was not a termination "for cause," which would have reduced the benefits to which he was entitled. However, on June 12, 2003, OF-HEO's Director, Armando Falcon, Jr. ("Falcon"), issued a letter to Freddie Mac, directing it to withhold any payment of termination benefits to Brendsel. The same day, another OFHEO official issued a second letter, directing Freddie Mac to take no action to fulfill Brendsel's employment agreement, including the vesting of stock and stock options. On June 17, 2003, OFHEO issued a third letter to Freddie Mac, ordering it to restrict all accounts held by Freddie Mac for the benefit of Brendsel, including previously vested stock options, deferred compensation, and other stock and options, in addition to the termination benefits. These letters also prohibited Freddie Mac from fulfilling the separation agreements of Clarke and another Freddie Mac officer, David Glenn. Brendsel's counsel made a written request for the release of the benefits, but Freddie Mac's counsel responded that it was unable to comply with the request based on OFHEO's instructions.

OFHEO subsequently brought an administrative enforcement action against Freddie Mac, Brendsel, and Clarke on December 17, 2003. OFHEO did not conduct any hearing with regard to the freeze on Brendsel's benefits and accounts. Brendsel brought suit before this Court on March 24, 2004, alleging that OFHEO's actions violated the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706.

In response to Brendsel's motion for preliminary injunction and in defense of its actions, OFHEO asserted that it has "plenary authority" to prohibit the payment of excessive compensation to Freddie Mac officers under the Federal Housing Enterprises Financial Safety and Soundness Act of 1992, 12 U.S.C. § 4501, et seq. ("the Safety and Soundness Act"). Specifically, OFHEO cited several provisions of the statute, which created OFHEO and set forth its supervisory powers. This Court rejected OFHEO's statutory arguments, and found that none of the cited provisions of the Safety and Soundness Act supported the office's actions with regard to Brendsel's benefits. The Court also held that OFHEO's actions in issuing letters to Freddie Mac to freeze Brendsel's benefits did not comport with the enforcement provisions of the Safety and Soundness Act, which articulate the manner in which the Director may issue temporary and permanent cease-and-desist orders. 12 U.S.C. §§ 4631–32.

Based on these conclusions, its judgment that Brendsel had demonstrated "irreparable harm," and its finding that the "substantial injury to other parties" and "public interest" prongs of the test for preliminary injunctive relief weighed in Brendsel's favor, the Court issued preliminary injunctive relief. The Court's order enjoined OFHEO from ordering, directing, or suggesting, through any informal procedure not statutorily defined, that Freddie Mac withhold assets and funds to which Brendsel is entitled under the employment agreement.

## II. The Clarke Action

In the current action, Clarke similarly asserts that OFHEO has deprived him of property to which he is entitled, in violation of the Fifth Amendment and the APA. Clarke joined Freddie Mac in 1998 as Senior Vice President of Finance, and was promoted in November 2000 to the position of Chief Financial Officer. Amend. Compl. ¶ 2. During 2002, Clarke decided to leave Freddie Mac, and on October 8, 2002, Clarke and Freddie Mac executed an "Agreement and Release of Claims" ("the first agreement"). *Id.* at ¶ 8. Under this agreement, Clarke agreed to remain employed until September 30, 2003, the designated "separation date." *Id.* Freddie Mac agreed that Clarke would be entitled to certain assets upon his separation from the company, including a severance payment and an annual bonus. *Id.* Under the agreement, Clarke waived his rights to any additional grants of restricted stock and stock options, but would continue to vest in restricted stock grants and also be able to exercise stock options and dividend equivalents that he received prior to January 1, 2003, up to the date of his separation. *Id.*; Pl. Reply to Mot. for PI 2. OFHEO approved the first agreement on January 9, 2003. Amend. Compl. ¶ 8.

With Clarke's departure date looming, Clarke and Freddie Mac entered into a superseding Agreement and Release of Claims ("the second agreement") on February 4, 2003. Amend. Compl. ¶ 9. The second agreement was virtually identical to the first agreement, except that it extended the period of time that Clarke would be entitled to severance payments and for which he would receive bonus payments. *Id.* OFHEO approved the second agreement on March 24, 2003. *Id.*

Freddie Mac subsequently requested that Clarke remain with the company for several additional months and on April 18, 2003, the parties executed another superseding "Agreement and Release of Claims" ("the third agreement"). Amend. Compl. ¶ 10. The third agreement was virtually identical to the second, except that it extended once again the period of time that Clarke would be entitled to severance payments and for which he received bonus payments. *Id.*

On June 6, 2003, while the third agreement was pending OFHEO's approval, Clarke resigned from Freddie Mac at the request of the Board of Directors. Amend. Compl. ¶ 11. Clarke thus argues that he was entitled to the benefits described under the second agreement, which had been approved by OFHEO. *Id.* Clarke estimates that the value of the property due to him upon his separation was approximately $1,115,848.99. *Id.* at ¶ 13. This amount includes: (1) $352,913.00 in severance payments; (2) $380,588.54 in bonus payments for 2002 and 2003; (3) 4,470 shares of restricted stock awarded to him in 2000, with a lapse date of September 8, 2003, valued on that date at $247,347.45; (4) stock options awarded to him in 1999, 2000, and 2001, vesting prior to September 30, 2003, worth approximately $100,000.00; and (5) stock dividends awarded in 1999, 2000, and 2001, vesting prior to September 30, 2003, worth approximately $35,000. *Id.* at ¶ 12(a)-(e).

Like Brendsel, Clarke was not terminated "for cause" by Freddie Mac. Rather, he resigned from the company and thus believed that he was entitled to all retirement benefits set forth under the second agreement. Amend. Compl. ¶ 11. However, Clarke's benefits were subsequently frozen following the June 12, 2003 and June 17, 2003 letters sent by OFHEO to Freddie Mac, ordering the company not to take any action to fulfill the separation agreements of Brendsel, Clarke, and Glenn. Pl. Mot. for PI, Ex. 2, 3, 4. Freddie Mac complied with OFHEO's directives, but also acknowledged in a September 4, 2003 letter that it had "in place contractual arrangements" governing its obligations to Clarke and Brendsel, and also stated that "[o]n the advice of counsel, Freddie Mac is required by law to perform its obligations under those contractual agreements unless those obligations are superseded by valid authority." Pl. Mot. for PI, Ex. 5.

Clarke, through counsel, sent a written request for the release of his benefits to Director Falcon on April 5, 2004. Pl. Mot. for PI, Ex. 6. OFHEO responded in an April 26, 2004 letter, stating that Clarke's letter had set forth no grounds "upon which OFHEO should act to disturb the status quo" and that counsel had not alleged any irreparable harm that would occur due to withholding the payment. Id., Ex. 7. As previously noted, Clarke, like Brendsel, is the subject of OFHEO's administrative enforcement action, in which any hearing on the merits will not occur prior to 2006, when summary judgment briefing is scheduled to conclude. Pl. Mem. in Support of PI 7.

Clarke filed the current suit on July 27, 2004. Following this Court's decision on August 30, 2004 issuing preliminary injunctive relief in *Brendsel*, Clarke's counsel again sought release of the benefits, this time through a letter to Freddie Mac,

dated September 15, 2004, and a letter to OFHEO, dated September 22, 2004. Pl. Mot. for PI, Ex. 8–9. When the benefits were not released, Clarke filed the current Motion for Preliminary Injunction on September 30, 2004. OFHEO filed its opposition to the motion on October 12, 2004. The same day, OFHEO sent a letter to Freddie Mac, advising it that the three letters issued on June 12, 2003 and June 17, 2003 were being "rescinded." Def. Opp., Ex. H. OFHEO then issued a "Director's Order Prohibiting Excessive Compensation." *Id.*, Ex. I. The Director's Order prohibits Freddie Mac from paying any compensation under the October 8, 2002 and February 4, 2003 separation agreements. *Id.* at 5. It also orders that Freddie Mac immediately take steps to obtain "reimbursement or restitution" from Clarke of any compensation found to be "excessive" and to rescind any and all separation agreements and releases of claims with Clarke. *Id.* at 5. The order makes several factual findings as support for these actions, including that Clarke "was not qualified to hold the position of CFO" and "failed to perform the duties and responsibilities of CFO." *Id.* at 3–4. The order does not reference any factual findings with regard to "comparable" compensation in similar businesses.

Based on these facts, Clarke asks this Court to issue preliminary injunctive relief, enjoining OFHEO from ordering Freddie Mac to freeze his benefits.

## DISCUSSION

### I. Standards of Review

#### A. Motion for Preliminary Injunction

█ This Court may issue a preliminary injunction only when the movant demonstrates: (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is

not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Mova Pharmaceutical Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C.Cir.1998). These factors "interrelate on a sliding scale and must be balanced against each other." *Davenport v. International Brotherhood of Teamsters,* 166 F.3d 356, 361 (D.C.Cir. 1999); *Dodd v. Fleming,* 223 F.Supp.2d 15, 19 (D.D.C.2002) ("*Dodd* "). Accordingly, to determine whether injunctive relief is appropriate, the Court must evaluate and balance the strengths of the movant's arguments as to each of the four factors. "If the plaintiff makes a particularly weak showing on one factor, however, the other factors may not be enough to compensate." *Dodd,* 223 F.Supp.2d at 20 (citing *Taylor v. Resolution Trust Corp.,* 56 F.3d 1497, 1507 (D.C.Cir.1995), *amended on other grounds,* 66 F.3d 1226 (D.C.Cir.1995)). Furthermore, when a party seeks a mandatory injunction, *i.e.,* to change the status quo rather than to preserve it, the moving party "must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *Columbia Hospital for Women Foundation, Inc. v. Bank of Tokyo–Mitsubishi, Ltd.,* 15 F.Supp.2d 1, 4 (D.D.C.1997) (citations omitted).

### B. *Motion to Dismiss*

The Court will only dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.,* 16

F.3d 1271, 1276 (D.C.Cir.1994). However, even if the Court accepts as true all of the factual allegations set forth in the complaint, *Doe v. United States Dept. of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985), and construes the complaint liberally in favor of the plaintiff, *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979), it "need not accept inferences drawn by [the] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint." *Kowal,* 16 F.3d at 1276.

### II. *Motion for Preliminary Injunction*

In support of his Motion for Preliminary Injunction, Clarke argues that, just as this Court found in *Brendsel,* OFHEO has not demonstrated its authority to freeze his termination benefits. Pl. Mem. in Support of PI 8. According to Clarke, the issues presented in this case are "identical" to those presented in *Brendsel. Id.* While the Court agrees with OFHEO that certain facts specific to the current action require additional discussion, in the final analysis, the Court finds that preliminary injunctive relief is similarly warranted in this case.

### A. *Likelihood of Success on the Merits*

With regard to his likelihood of success on the merits of his APA claims,[2] Clarke asserts that because this Court rejected OFHEO's arguments with regard to the reach of its statutory authority to prohibit excessive compensation in *Brendsel,* the Court should also reject OFHEO's arguments here.

As in *Brendsel,* OFHEO's arguments in support of its actions focus on three sections of the Safety and Soundness Act, 12 U.S.C. §§ 4513, 4518(a), 1452(h). OFHEO first asserts that sections 4513(b)

**2.** As the Court finds Clarke has demonstrated a likelihood of success on the merits of his APA claim, it has no need to address the Fifth Amendment claim.

and 4518 of the Act provide the Director with "general authority" to take whatever actions are necessary to prevent Freddie Mac from paying excessive compensation to its executives. Def. Opp. 12; Def. Suppl. Brief 8. In that regard, OFHEO asserts that under section 4513(b), the Director is authorized "to make such determinations, take such actions, and perform such functions" as he "determines necessary" with regard to "prohibiting the payment of excessive compensation by the enterprises to any executive officer of the enterprises under section 1318 [12 U.S.C. § 4518]." Def. Opp. 12 (citing 12 U.S.C. § 4513). Furthermore, section 4518 prohibits Freddie Mac from providing compensation to an officer "that is not reasonable and comparable with compensation for employment in other similar businesses...involving similar duties and responsibilities." 12 U.S.C. § 4518(a). OFHEO contends, as it did in *Brendsel*, that because the Act does not set forth procedures for guarding against the payment of excessive compensation, it is within the Director's discretion to formulate reasonable procedures, which he has done here. Def. Opp. 12.

However, for the Court to accept OFHEO's view of its plenary authority to review compensation and take "whatever actions are necessary," the Court would need to ignore the plain language in section 4513 that, on its face, limits the Director's authority to a review of compensation based on *its reasonableness and comparability to other industries* and also prohibits the Director from setting specific compensation levels. *See Brendsel*, 339 F.Supp.2d at 61–62. Section 4518 also focuses on the prohibition of the payment of excessive compensation, determined through the assessment of whether such payment is comparable to compensation in other similar businesses. In this action, both the "rescinded" letters and the Director's Order focus solely on alleged in-

competence and misconduct by Clarke, rather than on the reasonableness of his benefits as compared to compensation in similar businesses. Accordingly, the Court once again rejects these statutory arguments.

■ OFHEO next asserts that Clarke cannot demonstrate a likelihood of success on the merits of his APA claim because under 12 U.S.C. § 1452(h), it has the authority to review Clarke's termination benefits. Def. Opp. 13. Unlike the benefits at issue in *Brendsel*, to which he was entitled as a result of a 1990 agreement with Freddie Mac, the separation agreements in this action were executed *after* OFHEO's creation in 1992. Accordingly, these agreements would properly be subject to OFHEO's review under section 1452(h). This statutory basis for the Director's Order must nevertheless be rejected. OFHEO does not contest that the first and second agreements between Clarke and Freddie Mac were reviewed and *approved* by the office. Instead, OFHEO asserts that "[s]ubsequent information" has come to light, showing that "the compensation provided for under these agreements is excessive...." Def. Opp. 13. However, the office concedes in its supplemental pleadings that it has previously indicated that section 1452(h) has no retroactive application. Def. Suppl. Brief 4–5 (citing 66 Fed.Reg. 47550–01, 47553 (Sept. 12, 2001)). Thus, OFHEO is reduced to arguing that it has "dual review authority" to review excessive compensation on an "ongoing basis" under section 4518. Def. Suppl. Brief 5. As this Court previously noted, section 4518 does not permit the Director to withhold the payment of compensation it subsequently deems "excessive" based on the incompetence or misconduct of the payee. *Brendsel*, 339 F.Supp.2d at 63.

■ Finally, the Court agrees with Clarke that the Director's Order is incon-

sistent with the formal procedures set forth under 12 U.S.C. §§ 4631 and 4632, which permit the Director to issue temporary and permanent cease-and-desist orders. As this Court held in *Brendsel,* the Safety and Soundness Act provides that the Director can only issue temporary cease-and-desist orders upon a showing that the conduct or violation alleged will result in insolvency, significant depletion of the core capital of the enterprise, or otherwise cause irreparable harm. *Brendsel,* 339 F.Supp.2d at 64. OFHEO alleges none of the relevant factors set forth under sections 4631 and 4632. Moreover, the order issued by OFHEO does not reflect any of the procedural safeguards set forth in the statute, which allows parties to challenge cease-and-desist orders through administrative hearings, 12 U.S.C. § 4633, or in federal district court. 12 U.S.C. § 4632(d). Instead, OFHEO once again asserts that it has "general authority" to prevent payment of excessive compensation and that to prohibit the office from doing so "flies in the face of congressional intent in creating the separate excessive compensation authority." Def. Suppl. Brief 7–8. The Court will not rely on this alleged "implicit" authority when the statute clearly sets forth enforcement procedures, which have not been utilized in this case. Consequently, the Court finds that Clarke has shown a likelihood of success on the merits of his APA claim.

### B. *Irreparable Harm*

 Clarke asserts that if this Court declines to issue preliminary injunctive relief, he will suffer "irreparable harm" because he is not currently able to exercise restricted stock and stock options granted to him, and profits that would be reaped as a result of such exercise will be unrecoverable. Pl. Mem. in Support of PI 9. "Although the concept of irreparable harm does not readily lend itself to definition, the courts have developed several well known and indisputable principles to guide them in the determination of whether this requirement has been met." *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C.Cir.1985) (*"Wisconsin Gas"*). The injury must be both "certain and great; it must be actual not theoretical." *Id.* Indeed, injunctive relief will not be granted "against something merely feared as liable to occur at some indefinite time..." *Connecticut v. Massachusetts,* 282 U.S. 660, 674, 51 S.Ct. 286, 75 L.Ed. 602 (1931).

 OFHEO is correct that economic loss alone will rarely constitute "irreparable harm." *Wisconsin Gas,* 758 F.2d at 674. "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." *Wisconsin Gas,* 758 F.2d at 674 (citing *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir.1958)). Indeed, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough" to demonstrate "irreparable injury." *Virginia Petroleum Jobbers Ass'n,* 259 F.2d at 925; *see also Boivin v. U.S. Airways, Inc.,* 297 F.Supp.2d 110, 118 (D.D.C.2003). However, there are several narrow exceptions to this general proposition. For instance, courts have recognized that economic loss may constitute "irreparable harm" where a plaintiff's alleged damages are unrecoverable. *See American Federation of Government Employees, AFL–CIO v. U.S.,* 104 F.Supp.2d 58, 76 (D.D.C.2000) (finding "irreparable harm" where the plaintiffs were likely to be prevented from recovering damages by federal back pay statute); *National Trust for Historic Preservation v. FDIC,* 1993 WL 328134, at *3 (D.D.C. May 7, 1993) (finding "irrepara-

ble harm" where no remedy was available at law).

The Court finds that Clarke has alleged "irreparable harm" because losses resulting from his inability to exercise rights to restrict stock and stock options will likely be unrecoverable. As the Court found in *Brendsel*, Freddie Mac's compliance with OFHEO's orders may not be actionable and OFHEO is likely to be immune from suit. *Brendsel*, 339 F.Supp.2d at 66. In addition, claims based on interference with contractual rights are exempted under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(h), and the Supreme Court has held that constitutional torts are not actionable under the statute. *Id.* at 66–67 (citing *FDIC v. Meyer*, 510 U.S. 471, 477–78, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)). Even if Clarke were to proceed with another tort theory, OFHEO would likely be shielded by the "discretionary function" exception to FTCA liability. *Id.* (citing 28 U.S.C. § 2680(a)). Accordingly, even though only a portion of the benefits currently frozen by OFHEO's order would not be recoverable, the Court finds that Clarke has made a sufficient showing of "irreparable harm," especially when considered together with the other factors, to justify an injunction in this case.

### C. *Substantial Injury to OFHEO and the Public Interest*

 Finally, the Court finds that the remaining factors for a preliminary injunction also weigh in favor of the requested relief. OFHEO asserts that the issuance of such relief will cause substantial harm because it renders the Director's "statutory authority meaningless." Def. Opp. 21. The Court disagrees. OFHEO is free to seek relief from any perceived excessive compensation through the enforcement procedures set forth under the Safety and Soundness Act, and may also strive to prevent such excessive compensation from being distributed through its

ability to approve employment agreements in advance. Furthermore, the Court finds that the "public interest" prong of the test for preliminary injunctive relief also weighs in favor of Clarke. The Court agrees with Clarke that there is a substantial public interest in ensuring that OFHEO acts within the limits of its authority. *Cf. National Treasury Employees Union v. U.S. Dep't of Treasury*, 838 F.Supp. 631 (D.D.C.1993).

For these reasons, the Court finds that preliminary injunctive relief is warranted in this case.

### III. *Motion to Dismiss*

In its Motion to Dismiss, OFHEO relies almost entirely on the same arguments asserted in its pleadings in response to the Motion for Preliminary Injunction. Accordingly, the Court **DENIES** this motion as well.

### *ORDER*

For the reasons set forth above, it is this 30th day of November, 2004, hereby

**ORDERED** that the plaintiff's Motion for Preliminary Injunction is **GRANTED**; and it is further

**ORDERED** that defendant OFHEO is hereby enjoined from ordering, directing, or suggesting, through any informal procedure not statutorily defined, that Freddie Mac withhold those assets and funds to which Clarke is entitled under the Agreement and Release of Claims, dated February 4, 2003; and it is further

**ORDERED** that the defendant's Motion to Dismiss is **DENIED**.

**SO ORDERED.**